IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ABBEY MICHELLE WAKE                                                         PLAINTIFF

v.                                    Case No. 4:20-cv-91

HARMONY GROVE SCHOOL
DISTRICT 614, *et. al*                                                      DEFENDANTS

## ORDER

Pending are two motions to dismiss, one filed by Defendants Kristina Mays ("Mays") (f/k/a Kristina Vice) and Whitney Flowers ("Flowers") (f/k/a Whitney Cash) and the other filed by Defendants Harmony Grove School District, Sarah Gober, Vickie Jackson, Chad Withers, and Aimee Brown (collectively the "HGSD Defendants"). (Doc. Nos. 15 and 31). Both motions are ripe for consideration.

A. The Complaint

This action arises out of sexual abuse suffered by Abbey Michelle Wake ("Wake") at the hands of Gary Vice while she was between the ages of thirteen and sixteen. Wake babysit for Vice and his wife's two sons, and their families knew each other and were friends from church. Vice, a former correctional officer with the Arkansas Department of Corrections (ADOC), pleaded guilty to rape and is incarcerated for his crimes. Wake, who was twenty years old at the time she filed her complaint, now seeks to hold Vice civilly liable for his actions.

She has also sued Kyle Vaughn, former employee of the Haskell Police Department and friend of Vice for whom Wake also babysat, for civil liability. Vaughn received nude pictures of Wake, allegedly sent by Wake at Vice's insistence and also touched her breast. Vaughn pleaded guilty to a Class B felony of sexual assault in the second degree and was sentenced to six months in the ADOC. Kevin Cooper, former employee of the Saline County Sheriff's Office, is also

named as a defendant for his role in posting about Wake on social media after Vaughn's arrest.

In addition to Vice, Vaughn, and Cooper, Wake also seeks to "hold responsible those who should have but did not prevent his conduct, those who enabled and facilitated Vice's criminal behavior." Wake has sued the Harmony Grove School District where Wake was enrolled at the time of the abuses, high school principal Chad Withers, former junior high principal Sarah Gober, and school secretaries Aimee Brown and Vickie Jackson (collectively the HGSD Defendants). In summary, the complaint alleges that Vice was allowed to check Wake out of school on numerous occasions even though he did not have permission to do so and that the HGSD Defendants failed to follow the district's attendance policy, including notifying a parent when a student has missed three classes in any term.

Wake has also sued two individuals for breach of their mandatory reporter obligations pursuant to Ark. Code Ann. § 12-18-206 of Arkansas's Child Maltreatment Act. Wake alleges that Vice's now ex-wife, Kristina Mays, was a mandatory reporter under the statute as a foster parent and registered nurse, and that she failed to report Wake's maltreatment or suspected maltreatment at the hands of Vice to the Child Abuse Hotline. Likewise, Wake alleges that Vice's adult daughter, Whitney Flowers, a mandatory report by virtue of being employed by the Arkansas Department of Corrections, also breached her duty to report the maltreatment or suspected maltreatment of Wake.

B. <u>Statute of Limitations</u>

In both pending motions to dismiss, Defendants argue that the complaint against them is barred by the three-year statute of limitations provided by Ark. Code Ann. §16-56-105. However, as Wake stated in her responses, she was a minor at the time she was abused by Vice and any cause of action against Defendants accrued. Therefore, pursuant to Ark. Code Ann. §§

15-56-116 and 9-25-101, Wake had three years from the time she turned eighteen on January 25, 2017 to bring these claims. Her complaint, filed January 24, 2020, was filed one day short of three years and is thus not barred by the statute of limitations. The motions to dismiss are denied as to the statute of limitations.

    C. <u>Legal Standard</u>

A complaint must contain "a short and plain statement of the claim that the pleader is entitled to relief" to survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 8(a)(2). The complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests and must also contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. *Id.* When considering a motion to dismiss for failure to state a claim, the Court "assumes all facts in the complaint to be true and construes all reasonable inferences from those facts most favorably to the complainant." *Minnesota Majority v. Mansky*, 708 F.3d 1051, 1055 (8th Cir. 2013).

    D. <u>Motion to Dismiss filed by Kristina Mays and Whitney Flowers</u>

Both Mays and Flowers have moved to dismiss the complaint against them for failure to state a claim under the Arkansas's Child Maltreatment Act. To state a claim for failure to report, the complaint must allege that a person who is required to make a report of maltreatment or suspected maltreatment to the Child Abuse Hotline purposely failed to do so and damages were proximately caused by that failure. A mandated reporter is required to make a report if they have "reasonable cause to suspect that a child has been subjected to maltreatment" or "observes a

child being subjected to conditions or circumstances that would result in child maltreatment." Ark. Code. Ann. § 12-18-402(a). Child maltreatment under the act is defined as "abuse, sexual abuse, neglect, sexual exploitation, or abandonment." Ark. Code Ann. § 12-18-103. Mays and Flowers do not challenge that they were mandatory reporters.

As to Mays, the complaint contains the following allegations.[1] Mays was Vice's wife during the time Vice abused Wake. She was mandatory reporter as a foster parent and a registered nurse. Wake had been babysitting Mays and Vice's two sons for approximately three or four years. In an interview with Detective Davis, Mays said there has been tension between her and Vice for a while, and she was filing for divorce. She also told Davis that Vice had an affair years ago and had had other romantic interests during their marriage. Mays said she suspected that Vice was having an affair at the time she was interviewed but was "floored" to hear that it was with their babysitter. She also told Davis that Wake was at their house "all the time" and would even stay overnight and would also walk to their house, which was close to the school, when she didn't feel well. Mays stated that Vice and Wake would talk very often and when she asked him about it, Vice would say that "Abbey thought of him as a father figure and that he was just trying to help her." In an interview with Tracy Childress of the Child Advocacy Center, Wake said that she believed Mays was aware that something was going on and that Vice had told Wake that his wife was asking questions. Finally, the complaint alleges that "[o]n one occasion, Abbey and Vice were in the bedroom with the door locked when Kristina phoned and one of the boys tried to enter the room. Vice told Kristina that one of the boys must have locked the door." (Doc. No. 1, ¶ 49.) The complaint concludes that Mays breached her duty to report and that Wake suffered damages as a result.

---

[1] Doc. No. 1 at ¶¶ 13, 27, 28, 43, 49, 165-169.

4

Defendant Mays argues that these allegations are insufficient to show that Mays had ever observed Wake being subjected to maltreatment or that she would have had reasonable cause to suspect that Wake had either been subjected to maltreatment or subjected to circumstances that would result in child maltreatment. Construing all reasonable inferences most favorably to Wake, however, the Court finds that the complaint sufficiently alleges that the frequent communications between Vice and Wake had caused Mays to question Vice about them, that she suspected Vice of having another affair, and that Mays knew of one occasion when Vice and Wake were locked in the master bedroom together when she was out of the house and that she had asked Vice about it. The allegations against Mays are sufficient to survive a motion to dismiss.

As to Flowers, the complaint alleges the following.[2] Flowers was a mandatory reporter as a correctional officer with the Arkansas Department of Corrections. Vice told an investigator that his last contact with Wake might have been at Flowers' home. When she was interviewed, Flowers stated that Wake was like a sister to her and she could not believe "any of it." These allegations are insufficient to state a cause of action for failure to report child maltreatment. While Vice stated that he had inappropriate contact with Wake at Flowers' home, there are no allegations that Flowers was aware of it or had reasonable cause to suspect it was occurring. Flower's motion to dismiss is granted.

E.  <u>Motion to Dismiss Filed by HGSD Defendants</u>

Wake makes the following claims against HGSD Defendants pursuant to §1983: (Count I) violation of the Fourteenth Amendment's right to substantive due process and also for a deprivation of rights under the Arkansas Constitution; (Count II) negligent training/failure to

---

[2] Doc. No. 1 at ¶¶ 15, 40, 45

train/inadequate training against HGSD and Defendants Gober and Withers; (Count III) negligent supervision/failure to supervise/inadequate supervision against HGSD and Defendants Gober and Withers; (Count IV) deprivation of constitutional rights caused by official policies, procedures, practices, customs and usages against HGSD and Defendants Gober and Withers; (Count V) negligence against HGSD under the doctrine of respondeat superior; (Count VI) negligence against Defendants Gober, Jackson, Withers, and Brown. The HGSD Defendants move to dismiss each of these claims against them.

1. Substantive due process (Count I)

The general rule is that the Due Process Clause of the Fourteenth Amendment does not impose a state, in this case the HGSD Defendants, to affirmatively protect an individual from the criminal acts of a third-party like Vice. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989). ("[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." (*Id.* at 195)).

The HGSD Defendants acknowledge that there are two exceptions to this rule, one, when an individual is held in state custody and, two, when the state affirmatively places an individual in a position of danger. *Hart v. City of Little Rock,* 432 F.3d 801, 805 (8th Cir.2005). The parties agree, and the case law is clear, that a student in a school setting is not considered to be in state custody. *See Dorothy J. v. Little Rock Sch. Dist.*, 7 F.3d 729 (8th Cir. 1993). It is the second

exception, the state-created danger exception, that is at issue in this case.

State officials "create[ ] the danger" faced by an individual when they "act affirmatively to place [him] in a position of danger that he ... would not otherwise have faced.") *Anderson as trustee for next-of-kin of Anderson v. City of Minneapolis*, 934 F.3d 876, 881 (8th Cir. 2019), *cert. denied sub nom. Anderson v. City of Minneapolis, Minnesota*, 141 S. Ct. 110 (2020) (quoting *S. S. v. McMullen*, 225 F.3d 960, 962 (8th Cir. 2000) (en banc)). To state a claim for this exception, Wake must allege that (1) that she was a member of "a limited, precisely definable group," (2) that defendants' conduct put her at a "significant risk of serious, immediate, and proximate harm," (3) that the risk was "obvious or known" to the defendants, (4) that the defendants "acted recklessly in conscious disregard of the risk," and (5) that in total, the defendants' conduct "shocks the conscience." *Fields v. Abbott*, 652 F.3d 886, 891 (8th Cir. 2011) (quoting *Hart v. City of Little Rock,* 432 F.3d 801, 805 (8th Cir.2005)). The only element Defendants challenged is the final one, whether, in total, Defendants' conduct was sufficient to shock the conscience. To meet this element, a plaintiff must prove that "an official's action must either be motivated by an intent to harm or, where deliberation is practical, demonstrate deliberate indifference. *Montgomery v. City of Ames*, 749 F.3d 689, 695 (8th Cir. 2014)

The Court has no trouble finding that the HGSD Defendants had sufficient time to deliberate their actions challenged in the complaint, and therefore the deliberate indifference standard applies here. Deliberate indifference is a difficult standard to meet. "Mere negligence, or even gross negligence, is not actionable." *Montgomery v. City of Ames*, 749 F.3d 689, 695 (8th Cir. 2014). To establish deliberate indifference, a plaintiff must prove "both that the official 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' *and* that the official actually drew that inference." *Montgomery v. City of Ames*, 749

7

F.3d 689, 695 (8th Cir. 2014) (quoting *Hart v. City of Little Rock*, 432 F.3d 801, 805–06 (8th Cir. 2005) (emphasis added). Even assuming, as it must, that all the facts alleged in the complaint are true and construing all reasonable inferences in favor of Wake, the Court finds that the allegations do not meet this burden.

In response to the motion to dismiss, Wake summarizes her allegations against the HGSD Defendants as follows: "The upshot of Plaintiffs' allegations is that District Defendants, with ample opportunity and time to pay deference to attendance and other policies, instead repeatedly and patently ignored the rules and granted carte blanche rights to an unknown, 50-year-old man to remove a minor child from her school in the middle of the school day, absent any exigent circumstances or approval from her mother." (Doc. No. 41, p. 14) Repeatedly ignoring rules and allowing Wake to be removed by Vice is not sufficient to support a claim that the HGSD Defendants actually drew the inference that a substantial risk of serious harm to Wake was created. The complaint alleges that over time "the secretary in the office would wave to acknowledge [Vice] and summon Wake who would sign out and leave with him. (Doc. No. 1, ¶ 79). There are no facts alleged from which the Court can conclude that the school officials actually drew the inference that a substantial risk of serious harm existed.

For these reasons, the HGSD Defendants' motion to dismiss the substantive due process claim against them is granted both as to the claims under the United States Constitution and, as the same standard applies, the Arkansas Civil Rights Claim.

2. <u>Deprivation of Constitutional Rights Pursuant to an Official Policy or Practice (Count IV)</u>

To establish §1983 liability against HGSD and the two principal defendants, Gober and Withers, Wake must prove that her constitutional rights were violated by an "action pursuant to official municipal policy" or misconduct so pervasive among non-policymaking employees of

the municipality "as to constitute a 'custom or usage' with the force of law." *Ware v. Jackson Cty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) (quoting *Monell v. Department of Soc. Serv.,* 436 U.S. 658, 691 (1978) (*Monell* ) (internal quotation omitted)).

The complaint alleges that "despite the existence of written attendance policies, Harmony Grove Junior and Senior High Schools and their employees did not follow those policies, or as a matter of custom and usage, waived them, or enforced them inconsistently." (Doc. No. 1, ¶ 76). Plaintiff further alleges that "[a]lthough the District has written absence and attendance policies and procedures, there exist within the District certain unwritten policies, procedures, practices, customs, and usages relating to the administration of those absence and attendance policies, . . . that are so pervasive that they constitute the policy of the District and were the moving force behind-and the cause of-the constitutional deprivations suffered by Plaintiff as herein alleged. (*Id.* at ¶ 135).

Because the Court has previously found that no substantive due process violation has been sufficiently alleged, the motion to dismiss this § 1983 claim that Wake's constitutional rights were violated by an official custom or policy is also granted.

Furthermore, in spite of Plaintiff's allegations to the contrary, Arkansas law is clear that only the school board has policy-making authority for school districts. *Wolfe v. Fayetteville, Arkansas Sch. Dist.*, 600 F. Supp. 2d 1011, 1019 (W.D. Ark. 2009); Ark.Code Ann. § 6–13–620. As in *Wolfe*, it was the failure to comply with the district's express absence and attendance policies that forms the basis of Wake's complaint. There are no allegations that the HGSD school board was aware that either its high school or its junior high school were not following the district policies. For this reason also, the HGSD Defendants' motion to dismiss Count IV of the complaint is granted.

3. Negligence claims (Counts II, III, V, and VI)

The HGSD Defendants also filed a motion to dismiss the negligence claims against them[3] as being barred by the immunity created by Arkansas law, which provides:

> (a) It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, public charter schools, special improvement districts, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.
>
> (b) No tort action shall lie against any such political subdivision because of the acts of its agents and employees.

Ark. Code Ann. § 21-9-301.

Though filed as a motion to dismiss pursuant to Rule 12(b)(6), the HGSD Defendants attached two exhibits in support of their claim of immunity: an affidavit of HGSD Superintendent Heath Bennett and a letter from Stephen Scott regarding potential coverage for the claim under an insurance policy. (Doc. No. 31-1). In addition, the HGSD Defendants submitted a copy of the insurance policy at issue to their reply. (Doc. No. 45-1). Therefore, the Court converts this portion of the motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(d).

In her response to the motion to dismiss (Doc. No. 41, filed June 4, 2020), Plaintiff argues that she had not, at that time, had an opportunity to conduct discovery on the issue of whether there was, in fact, any insurance coverage available for the acts alleged to have been committed by the HGSD Defendants. The Court grants Plaintiff an additional 14 days from the date of this order to supplement her response to the now-converted motion for summary

---

[3] Negligent training/failure to train/inadequate training, negligent supervision/failure to supervise/inadequate supervision, negligence against Defendants Gober, Jackson, Withers, and Brown, and negligence against the HGSD under the doctrine of respondeat superior.

10

judgment on the issue of immunity. The HGSD Defendants will be allowed to file a reply within five days of any supplemental response.

Conclusion

For the reasons stated above, the Motion to Dismiss filed by Defendants Kristina Mays (f/k/a/ Kristina Vice) and Defendant Whitney Flowers (f/k/a Whitney Cash) (Doc. No. 15) is granted in part and denied in part; it is DENIED as to Defendant Mays and GRANTED as to Defendant Flowers. The Clerk is directed to change the style of the case to reflect the correct name of Kristina Vice to Kristina Mays.

The Motion to Dismiss filed by the Harmony Grove School District Defendants (Doc. No. 31) is GRANTED as to the claim of substantive due process violations (Count I) and as to the claim of deprivations of constitutional rights by official policies or customs (Count IV). The Motion to Dismiss as to the remaining claims against the HGSD Defendants is converted into a Motion for Summary Judgment, to which the Court gives Plaintiff 14 days form the date of this order to file a supplemental response and the HGSD Defendants 5 days to file a reply.

IT IS SO ORDERED this 29th day of January, 2021.

_____<br>UNITED STATES DISTRICT JUDGE