IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**ABBEY MICHELLE WAKE**                                                                 **PLAINTIFF**

v.                                          Case No. 4:20-cv-91

**HARMONY GROVE SCHOOL
DISTRICT 614,** *et. al*                                                                **DEFENDANTS**

## ORDER

Pending is Defendant Kristina Mays motion for summary judgment on the single claim against her—that she breached her statutory obligation as a mandatory reporter of suspected child abuse. The Court previously denied her motion to dismiss this claim and is now presented with evidence to consider the issue. Because the Court finds that genuine issues of material fact remain, her motion for summary is denied.

Mays's now ex-husband Gary Vice ("Vice") has been convicted of sexually assaulting Plaintiff, the couple's babysitter and a daughter of family friends, when she was between the ages of thirteen and sixteen years old. Mays, a foster parent and licensed nurse, does not dispute that she was a mandatory reporter of child abuse pursuant to Ark. Code Ann. § 12-18-402. That statute provides that a mandatory reporter "shall immediately notify the Child Abuse Hotline if they have (1) "reasonable cause to suspect that a child has been subjected to child maltreatment" or (2) "observes a child being subjected to conditions or circumstances that would reasonably result in child maltreatment." Ark. Code Ann. §12-18-402(a)(1) and (2). There is another statute at play, one that imposes civil liability on a mandatory reporter who "purposely fails" to make the report. Ark. Code Ann. § 12-18-206. Mays challenges the sufficiency of Plaintiff's evidence to establish the elements of both statutes.

Facts

Plaintiff's family and the Vice family were long-time friends who attended church together and socialized regularly.  Plaintiff was continually over at the Vice home either with her family or alone.  From the time she was twelve or thirteen, Plaintiff babysat regularly for the Vice family's two younger sons.  Mays was a registered nurse and Vice was correctional officer with the Arkansas Department of Corrections. Due to their work schedules and long shifts, Plaintiff regularly got the boys ready for school and walked them to school and walked them home after school. The school was about 200 meters from the Vice home.  Plaintiff was not usually paid for taking care of the boys. There were many times that Plaintiff would spend the night at the Vice home to be there to help in the morning.

Plaintiff testified at her deposition as follows.  Vice first sexually assaulted her when she was thirteen years old and that it happened too many times to count.  (Doc. 92-2, p. 3).  The assaults occurred over four years and took place at the Vice home, at the home of the Vice's oldest daughter, at Mays' parents' house, in parking lots, on dead end roads, and once at "duck camp."  Plaintiff was at the Vice home every day during the time from 2013 to 2015.  Vice would sexually assault her at the Vice home when Mays had gone to bed, but Mays never witnessed Vice sexually assaulting her.

Plaintiff further testified that Mays would come home and found her there with Vice when the boys were not there.  Mays would come home and the front door would be locked—the family didn't keep keys to the house, the just left it unlocked normally—so Mays had to knock to get in.  It took Vice one two minutes to get dressed and answer the door.  When he opened the door to Mays, Plaintiff was also there in the house even though she was supposed to be at school.  Mays would sometimes ask Vice what Plaintiff was doing there "but she never made a big deal."

2

(*Id.* pp. 4, 11-12).

Plaintiff further testified that one time Mays called the home and asked one of their sons, Lucas, where his dad was, and Lucas told her that his dad and Plaintiff were in the bedroom with the door locked.  (*Id.* pp. 7, 11).  Plaintiff did not hear the question or response, but Vice told her that was the exchange.  Then Vice got on the phone with Mays and Plaintiff heard him tell Mays that he and Plaintiff were not in the room together, although they had been together in a front bedroom. At some point, Vice told Plaintiff that Mays was asking him questions like why he had so many calls from Plaintiff "and stuff like that." (*Id.* p. 7).  According to Plaintiff she and Vice texted daily, probably starting when she was thirteen.

According to Mays's deposition testimony, she had access to Vice's telephone and had looked at it.  She never saw anything that gave her pause. She testified that she didn't recall seeing correspondence with Plaintiff on his phone. She did see phone calls to and from Plaintiff on Vice's phone but did not think it was uncommon since she was the couple's babysitter. Earlier in their marriage Vice had an affair that Mays found out about when she walked in on Vice and a woman in their house.  On the day Vice was arrested, Mays told police that she knew he was having an affair.  Mays had wanted to confront him the night before but "couldn't figure out how to confront him."  (Doc. 97-1 p. 65).  She stated that he was "acting differently than he normally did. . . . [she] could tell something was on his mind, he was on the phone all the time. He would go outside on the phone."  When Mays asked him who he was on the phone with, he would tell her different people *Id.* at 66.

When asked whether she had been told by Lucas about his dad being in the locked bedroom with Plaintiff, Mays testified that she does not recall that statement at all. (Doc. 97-1, p. 93). Vice also testified that he did not recall being asked by Mays about being in a locked

3

bedroom with Plaintiff. ((Doc. 97-3, p. 33).  When asked if she knew that Plaintiff would sometimes be at the Vice home during the school day, Mays initially answered no, but then recalled that Plaintiff would sometimes go over to the Vice home when she was not feeling well or had gotten her period since their house was so close to the school, but Mays did not know how frequently and did not know if Vice was ever there during those times.

## Summary Judgment Standard

Summary judgment is appropriate only when the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). "Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Celotex Corp.,* at 327.

## Analysis

Mays argues that Plaintiff cannot establish liability under the Child Maltreatment Act because she cannot prove (1) that Mays had reasonable cause to suspect that Plaintiff had been subjected to child maltreatment or (2) that Mays had observed Plaintiff being subjected to conditions or circumstances that would reasonably result her child maltreatment.    Ark. Code

Ann. §12-18-402(a)(1) and (2).  She further argues that even if Plaintiff could prove that Mays had reasonable cause to suspect or had observed Plaintiff's maltreatment at the hands of Vice, Plaintiff has no proof that Mays purposely failed to make the report as required to establish civil liability pursuant to Ark. Code Ann. § 12-18-206.

As Mays points out, Arkansas case law gives little guidance on when reasonable cause exists to suspect that a child has been maltreated.  Viewing the evidence most favorably to the nonmoving party, as it must, the Court finds that genuine issues of material fact remain on this issue of reasonable cause.  Plaintiff has provided evidence that Mays had come to her normally-unlocked home to find the door locked and Vice and Plaintiff inside alone on a school day and that on another occasion Mays had been told by her son that Vice and Plaintiff had been behind a locked bedroom door when Mays called looking for Vice.  Mays's testimony is that she did not recall those incidents.  In addition, Plaintiff has testified that Vice sexually assaulted her on a near-daily basis for several years, that several phone calls a day passed between her and Vice as well as frequent texting, and that Mays had questioned Vice about the frequent calls.  Based on this evidence a jury could find that Mays had reasonable cause to suspect that Vice was maltreating Plaintiff, whether she did suspect it or not.

These same fact questions also preclude the granting of summary judgment on the issue of whether Plaintiff purposefully failed to make a child maltreatment report.  The evidence is undisputed that years ago Mays had called to report her suspicion that her stepson had sexually assaulted her young daughter.  When questioned about the incident, Mays testified that she knew as a mandatory reporter that she needed to report her suspicion.   If the jury finds that Mays did find the front door locked in the middle of the school day with Vice and Plaintiff inside and that on a separate occasion she was told by her son that Vice and Plaintiff were inside the locked

bedroom, they could conclude that—as someone who knows her reporting obligation, she purposefully failed to make the report.

Mays also argues that even if she had made a report, the report would not have been accepted. The Court finds this argument unconvincing based on the evidence discussed above.

For these reasons, Defendant Mays's motion for summary judgment (Doc. 88) is DENIED. Plaintiff's motion for leave to file a surreply (Doc. 106) is also DENIED.

IT IS SO ORDERED this 17th day of November, 2021.

_____
UNITED STATES DISTRICT JUDGE